The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Craig H.D. Armond presiding. Afternoon, counsel. We'll call case number 4-22-0356, People of the State of Illinois v. Troy McKinney. Good counsel for the appellant, please state your name for the record. Of course, James Waller with the Office of the State Appellate Defender. Thank you, Mr. Waller. Good counsel for the appellee, please state your name for the record. James Ryan Williams for the state. Thank you, Mr. Williams. Mr. Waller, you may proceed. Thank you. May it please the court, counsel. My name is James Waller. It is my pleasure to represent Troy McKinney before you today. Troy is asking that his case be remanded for a new crankle hearing before a different judge so that the basis for his claims of ineffective assistance of counsel may be evaluated and so that a clean, objective record of that evaluation can be created for review. The Illinois Supreme Court instructs us that a crankle inquiry should operate as a neutral and non-adversarial proceeding. During the crankle inquiry in this case, Troy McKinney was belittled, condescended to, and interrupted repeatedly until he just gave up on trying to speak. This prevented a complete and reliable record being made of Troy's claims and he was denied the effective assistance of counsel. Because the trial court prevented such a record from being made, this court cannot evaluate whether counsel should have been appointed and thus the case should be remanded for a new crankle hearing before a different judge. In post-trial filings, Troy raised several areas where he believed that trial counsel neglected his case. Failure to review discovery, failure to impeach witnesses, failure to introduce evidence, fairly common allegations of things that sometimes occur. But the trial court met these reasonable, common allegations with surprising hostility. The court started off by belittling Troy, saying he apparently wants to sound constitutional or something when discussing Troy's claim of being deprived his constitutional right to effective counsel. And then apparently because Troy had the audacity to properly cite Strickland, the court says someone's given you a book apparently. These comments are insulting and condescending, communicate to Troy that the court does not believe he's capable of addressing these issues himself. But more importantly, they started off the hearing in an adversarial manner, which would eventually silence Troy and prevent him from making a reviewable record. The court also treated Roy like a child or worse when it described the state's position of filing additional charges as, if you're going to cry, we'll give you something to cry about. It described Troy's request for a jury trial as you did everything but thump your chest and say, let's get this baby working so I can get out of jail. Saying that someone is crying and thumping their chest is not how you speak to an a grown adult human who has made reasonable legal arguments in a court of law. The comments wouldn't be appropriate, even if Troy did behave the way the court describes. And as I discussed in the briefs, the record fails to provide justifications for them. But all of that said, we're not here for hurt feelings. The problem with the trial court's behavior is not that it was dismissive, condescending and insulting, though it was all of those things. The problem that concerns this court is the fact that we can have no confidence that Troy was able to make a full record of the basis of his claims that he was denied the effective assistance of counsel. After the court framed the case as one between a chest-thumping crier who's given something to cry about and the state who was, in the court's words, just here to see justice applied, the court kept repeatedly interrupting Troy. The court interrupts him eight or nine times during that crankle hearing. He only tried to speak about a dozen times, but three quarters of the time, the court interrupted him, often after just a couple of words. When Troy was finally able to mention that he did not have sufficient conversation with his lawyer, the court made no inquiry into how often they met, whether the attorney answered his questions, whether they reviewed discovery, or what evidence should have come in or not, or why. The court just argued with Troy and blamed him for any problems, suggesting that Troy must not have asked the right questions. When Troy tried to answer that charge, the court told him, it's my turn. Whether you asked the right questions or asked any questions, I don't know, or had any conversations with you, I don't know, the court said, but you've got to tell me what it is you think was deficient that would have changed the outcome of the trial. Troy was not even allowed to describe how his counsel's conduct was deficient before the court interrupted and demanded that he demonstrate prejudice. The court still did not even allow him to do that, interrupting him repeatedly, sometimes just to insult him. You don't know what a scheduling conference is. You don't know what you're saying. At the end of the day, we don't know what Troy was trying to say because the court never let him speak. These interruptions and arguments from the court led to misunderstandings that prevented a record from being made and ultimately silenced Troy completely. Troy tried to explain how his attorney never reviewed his discovery and how he sat in jail for 28 days without an indictment. The court cut him off and said, I'm physically holding in my hand a bill of indictment. Now go ahead if you've got something else that's credible. That indictment was a result of the state refiling charges that it had dismissed after Troy spent 28 days in jail without an indictment, just like he said. The court was so eager to argue with Troy and called him non-credible that it didn't just listen to what he was trying to say. But at that point, Troy had been insulted repeatedly, finally called a liar. He gave up and said, I spoke my piece. The court then went on to dispute Troy's claims based on its own faulty recollections. It claimed Troy was asked if an offer was made and that he declined it once trial. That's not exactly what happened, as we explained in the brief. The court said that defense counsel was present every day of the trial. Maybe, but being able to find the courtroom is hardly proof of effective assistance. But more importantly, defense counsel was not present at the pretrial hearing when the court basically dared Troy into going into trial on January 21st, 2022, which, again, that whole exchange is verbatim in the briefs. And the court's behavior at it was just as shockingly and unnecessarily contentious, particularly with a defendant who's represented by counsel, but whose counsel is not present in court. So the court had insulted and interrupted Troy repeatedly, and then disputed his events with the court's less than accurate recollections. At that point, there's therefore been a total breakdown in the proceedings. But again, the problem for this court is that the Krenkel hearing never developed the basis for Troy's claims that counsel failed to review discovery, failed to impeach witnesses, failed to move to suppress evidence, and failed to introduce exculpatory evidence. The court basically tells us... Excuse me if I may for a moment. You mentioned the exculpatory evidence, and I have to assume what you're referring to is the reference 911 call and the corresponding reference that he makes to Brady, which the inference is that he believed that the 911 call was exculpatory. Yes. Is the 911 call or a transcript thereof contained anywhere in this record before this court? It's not. They did not allow him to make a record of what he believes the call would have shown. That would be some basic Krenkel inquiry. What's this recording? What does it say? Why do you think it would have helped? Can we get this into the record? None of that ever happened. So we don't know. We can't evaluate whether counsel was ineffective for not introducing it, Your Honor. Thank you. Of course. The court tells us that it's abdicated its intent to develop these bases, and it's ruling. It says, I'm not even going to ask Mr. Dubay, the defense counsel, any questions about it, because I think Mr. Kinney is he regrets the position he finds himself in, and I can understand that, but that doesn't mean it's time for other people to jump into the pond and get whatever he's trying to say wiped all over them. It's unnecessarily insulting, but it's also illustrative of how this was not a proper Krenkel hearing. The court says in so many words, I am not going to inquire with defense counsel because I've already formed an opinion about whatever it is Troy is trying to say, whatever he's trying to say. It tells us the court doesn't even know what he's trying to say and isn't going to bother to try to find out. The entire purpose of the Krenkel hearing has been thwarted by an adversarial and non-neutral proceeding. Now, the state does not argue on appeal that the court believed that the court behaved in a neutral or non-contentious manner. The state's only arguments, which they should be held to today, are that only state participation in a Krenkel hearing can render the hearing inappropriately adversarial, and that the court fully addressed all of Troy's claims of ineffective assistance, and that any error is harmless beyond a reasonable doubt. The first and third of those arguments are contradicted by precedential case law, and the second is contradicted by the record. In People v. Jolly, we're told that a Krenkel hearing is to be held, quote, by having a neutral trier of fact initially evaluate the claims of the preliminary Krenkel inquiry without the state's adversarial participation, creating an objective record for review. Those are two different requirements, neutral trier of fact, no state participation. As the Supreme Court further said in Jolly, a record produced at a preliminary Krenkel inquiry with one-sided adversarial testing cannot reveal, in an objective and neutral fashion, whether the circuit court properly decided that a defendant is not entitled to new counsel. You cannot just have the court take on the role of a prosecutor and say that the record was created in an objective and neutral fashion simply because the prosecutor didn't participate. You've still got one-sided adversarial testing, as proscribed by People v. Jolly. That's why they are two separate requirements, neutral hearing without state participation. The state also argues that the court inquired sufficiently to address all of Troy's claims. That just didn't happen. We just talked about it briefly today. We don't know if counsel reviewed discovery with Troy. We don't know how often they met, how long, whether they discussed the 911 call, why it wasn't introduced, or what evidence Troy thinks should have been suppressed or why, or even how the witnesses should have been impeached. The circuit court and the state focused on Troy's mention of Brady law, but doing so ignores claim number four in Troy's motion for a new trial. In that claim, this is on C-117, he says, the jury did not hear the timestamp 911 call, nor was it produced as evidence by the state at trial. The nor in that sentence tells us these are two different premises, two different claims. All he's required to do is bring this claim to the trial court's attention, that's People v. Ayers. He literally did that, brought the claim that the jury did not hear the timestamp 911 call to the court's attention. Both the circuit court and the state on appeal have misconstrued that as only a claim against the prosecution, which it's not, on its face, in its text. This was sufficient to trigger the court's inquiry. Pretending that he did not make that claim does not erase the court's responsibility to inquire further. These are all questions that a crinkle hearing was designed to highlight, to answer, excuse me, the state's only argument, only highlights how the proceeding failed to be an appropriate crinkle hearing. In its conclusion, the state summarily argues that inadequacy in the court's inquiry is harmless beyond a reasonable doubt. This, again, ignores that People v. Jolly controls the analysis and held that when a hearing is adversarial, we can have no faith that the claims were properly heard and that a record is properly developed, which means we cannot- So leaving aside the merits for the moment of the whole argument, I'm just wondering about the reference that there was not erroneous beyond a reasonable doubt. Is that the standard? In People v. Jolly, the court says we can't find harmless beyond a reasonable doubt when the record has not been fully developed. That's the language literally from Jolly. It says we cannot conclude the error was harmless beyond a reasonable doubt. So they apply that analysis and they say it doesn't make any sense. If we can't tell what the record was, we cannot evaluate harmless. We cannot beyond a reasonable doubt know that he outlined all of his claims because we never heard what all the claims were. Okay, thank you. Thank you, Your Honor. Counselor, if I may have a follow-up as we're discussing Jolly. Please. The reference, I believe, from that case says the purpose of the crankle is best served by having a neutral trier of fact, and you've mentioned that, initially evaluate the claims of the preliminary crankle inquiry without the state's adversarial participation, creating, as you've noted, an objective record for review. I guess one of the questions we focused a lot, and your brief does as well, on the adversarial nature of the proceedings. But in this case, the state did not participate. So isn't the issue when we evaluate the trial court, it's whether or not that trier of fact was neutral, not necessarily an issue as it relates to being adversarial? Because by the nature of the preliminary inquiry, the court has to be able to ask questions of the defendant and perhaps counsel. So isn't it really that we're evaluating whether the trier of fact was neutral? And wouldn't that lead us to evaluating whether there was bias or an actual conflict or an evaluation along those lines versus focusing so much on this language of being adversarial? Your Honor, I think it's a fairly appropriate avenue to investigate and analyze the court's behavior here. Again, Jolly does say neutral and non-adversarial. Now, non-adversarial, let's assume that Jolly is only saying, let's assume, let's take the state's argument for a moment, that adversarial means state participation. As you highlight, neutral is a separate issue. So I propound that the court was both non-neutral and adversarial. But we don't even need to get to adversarial and whether that requires state participation, because we can tell from the record, the court was non-neutral. These Krenkel hearings should be developed via open-ended questions. What is it you think should have happened? Why do you think that should have been counsel? Why did you do this? Did you not do? We've read a million Krenkel proceedings, and we know that open-ended, neutral nature that they should have been conducted in. So yes, Your Honor, I think that if this is analyzed just on the neutrality prong in Jolly, remand is still required, and remand is still required to another judge. Therefore, Troy McKinney asked the court, as I said, remand the case for a new Krenkel hearing before a different judge so that several bases of his claims of ineffective assistance to counsel are evaluated and a clean record be established. If there are no other questions, I'll join you again in a moment. All right. Thank you, counsel. Mr. Williams. May it please the court, counsel. My name is James Ryan Williams, and it's my privilege to represent the state before this honorable court. In defendant's briefing, he focuses argument on basically arguing that the Krenkel proceedings here were not conducted in a non-adversarial matter, characterizing the trial court as aggressive, belittling, condescending, flippant, hostile, snide, and even dehumanizing. In support of this argument, as the court just noted, he principally relies on a general proposition of law from Jolly that preliminary Krenkel inquiry should operate as a neutral, non-adversarial proceeding. However, this prohibition against adversarial Krenkel proceedings is not some general prohibition against parties to the proceeding having what the defendant believes to be an adversarial tone. Rather, it's a specific prohibition against the state taking an adversarial role against the defendant. And here, as your honor noted, there's no suggestion that the state participated in this – in these proceedings. So there's – so these proceedings were not adversarial as contemplated and discussed in Jolly. So essentially and respectfully, it appears that the defendant here is essentially taking this general proposition of law from Jolly somewhat out of context. Now, just to be clear, the state's not at all suggesting that a trial court ought to be able to take an adversarial role. Rather, I'm merely pointing out that the Jolly prohibition on adversarial proceedings is directed against the state, not the trial court. So in that way, Jolly does not support the defendant's position. Now, I will admit the trial court here did seem somewhat frustrated with the defendant at times, and on this cold record, did appear to be somewhat rude at times. But I'm not seeing any authority that being rude or frustrated necessarily undermines the neutrality of the trial court, which, as your honor noted, really seems to be more of the issue here, the neutrality of the judge, not the adversarial nature of the proceedings. Now, with respect to the adequacy of the inquiry itself, defendant argues that the trial court did not adequately inquire into his claims of ineffective assistance. And based on my reading, there were essentially three basic claims here, that trial counsel failed to review discovery, failed to adopt pro se motions, and failed to introduce exculpatory evidence. With respect to that last claim regarding the exculpatory evidence, the defendant specifically argued that the jury did not hear the timestamp 911 call, nor was it produced as evidence by the state at trial, as it is the duty at trial for the state to show all evidence to the jury. Now, the state's position on this issue is essentially that this is not even an ineffective assistance of counsel claim, because this is an accusation against the state. And to the extent that it implicitly suggests that trial counsel should have introduced the 911 tape, that's not at all a clear claim of ineffective assistance of counsel, as required by AERS. With regard to the Brady violation, it's a somewhat similar, or the state takes a somewhat similar position, which is that counsel cannot violate Brady. That's a prohibition, or that's a commandment for the state to produce or to tender exculpatory evidence. So on its face, this issue is just patently frivolous. And again, it's limited to the way that the defendant has framed it here, and the defendant's framed this as a Brady violation. This is clearly a Brady violation, did not occur here. And then finally, with respect to the failure to adopt the pro se motions, defendant argued that counsel failed to adopt his pro se motions to squash the arrest, squash the warrant, and suppress evidence. But of course, it's well established that counsel has no duty to adopt pro se motions. So in short, it appears to the state that the defendant's claims here were based on either mistakes or misunderstandings of law, or therefore patently frivolous and properly denied by the trial court. Unless this court has any further questions. Counsel, I have one question. You mentioned specifically some of the claims that he raised, but didn't he also raise that he had not had a chance to meet with his defense counsel and go over discovery, and really that he had not met with his attorney at all until basically January when the matter is going to trial. Is there anywhere in the record that you believe that particular issue was addressed by the court that his attorney had not gone over discovery with him, either at the Krenkel hearing or anywhere else in the record? Not based on my recollection offhand, Your Honor, I'm very sorry. Thank you. Is there any other questions? I see none. Thank you, counsel. Mr. Waller, rebuttal. Thank you. Thank you, Your Honors. Briefly, because I believe I addressed some of these issues already, but again, the state's argument that only state participation could create a non-neutral or adversarial proceeding just doesn't make any sense, leads to absurd results. The court could do absolutely everything that a prosecutor, that we worry about a prosecutor doing. Cross-examine them, could introduce evidence, could testify. The court could do all these things as adversarial and non-neutrally as possible, and it would be okay under Jolly that that can't be the law, clearly. Again, I believe that we don't even have to worry about the intent of Jolly because the text is clear. A neutral and non-adversarial participation without the state's participation, excuse me, non-adversarial hearing without the state's participation. As far as whether or not Troy brought his claims to the court's attention clearly enough, the court's not required to tie half of its brain behind its back and construe what he's saying as strictly as possible. He said exculpatory evidence, or at least what we can infer as exculpatory evidence in the 911 call, was not introduced. He clearly made that claim. All of us understood that that's what he was saying. None of us really have a question about it. The trial court could not have had a reasonable question. Therefore, he satisfied errors. He brought a clear claim of at least one instance of ineffective assistance of counsel, and the court didn't even inquire into that clear claim. Again, as the court has mentioned, as Justice Lanyard mentioned, conversations with counsel, how often they met, whether they reviewed discovery, et cetera. I mean, none of the claims were properly investigated or inquired upon, so we don't have to go through every single one. The fact that he called it a Brady violation doesn't matter because he said evidence was not introduced that I think could have been exculpatory. He could have called it a Mickey Mouse violation. That doesn't remove the court's requirement to analyze and inquire about it. If there are other questions, again, we ask that the case be remanded for a new clinical hearing for a new, slightly more neutral judge. Thank you. All right. Thank you, counsel. The court will take this matter under advisement. The court stands in recess.